IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANN-MARIE FLEMING                                                                                    PLAINTIFF

      V.                                       Civil No. 3:14-cv-03109-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                                      DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Ann-Marie Fleming, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

      Plaintiff filed her application for DIB on November 8, 2012, alleging a disability onset date of July 10, 2011, due to "Pars fracture 13, 2 failed back surg., spinal stenosis / off and on temp paralysis, Post Traumatic Stress Disorder, Severe Anxiety Disorder, Trauma to spine due to back being broken for 13 years before fracture was found, Chronic immune disorder, and Fibromyalgia." (T. 144-145, 194) The Commissioner denied her application initially on January 18, 2013 (T. 96-98), and denied it at reconsideration on March 4, 2013 (T. 100-101). Plaintiff requested an administrative hearing (T. 102-103), and the hearing was held on September 25, 2013, before the Hon. Harold D. Davis, Administrative Law Judge ("ALJ"). (T. 30-65) Plaintiff was present and represented by her

attorney, Frederick "Rick" Spencer. (T. 30, 32) Also present was Zach Langley, a vocational expert ("VE"). (T. 30, 32)

At the time of hearing, Plaintiff was 40 years old with a Bachelor's Degree in political science. (T. 34-35) She had past relevant work ("PRW") experience as an administrative assistant, file clerk, cashier, waitress/bartender, and office manager for a medical clinic. (T. 36-38, 58-59, 170) She last worked on July 10, 2011. She stopped working because of her condition(s) and because of other reasons, stating that she "could no longer handle it mentally, emotionally or physically." (T. 195) She received unemployment benefits from July 2011 until November 2012. (T. 36) She was married on December 15, 2011, and her husband died of cancer on April 23, 2013. (T. 45-46, 145)

On October 25, 2013, the ALJ issued an unfavorable decision finding that Plaintiff's degenerative disc disease of the lumbosacral spine, compression fracture of L3-4 status post fusion, arthrodesis, herniated nucleus pulposus at L2-3, post-traumatic stress disorder, and depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (T. 14-16) After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she would be limited to work involving only simple tasks and simple instructions and only incidental contact with the public. (T. 16)

With the help of the VE, the ALJ determined Plaintiff could not perform her PRW, but she could perform the requirements of representative occupations such as ticket counter (DOT 219.587-010), with 642 such jobs existing in Arkansas and 70,871 in the national economy; almond blancher, hand (DOT 521.687-010), with 29 such jobs in Arkansas and 1,100 in the national economy; and, sticker (DOT 734.687-090), with 10 such jobs in Arkansas and 554 in the national economy. (T. 24-

25) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 25)

The Appeals Council denied Plaintiff's request for review on November 4, 2014. (T. 1-6) Plaintiff filed this action on November 19, 2014. (Doc. 1) This case is before the undersigned by consent of the parties. (Doc. 6)  Both parties have filed appeal briefs (Docs. 9, 10), and the case is now ready for decision.

### II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*. Thus, the Court's review is limited and deferential to the Commissioner. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from

engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises three issues on appeal that can be summarized as follows: (1) the ALJ's determination of Plaintiff's RFC is unsupported by substantial evidence as it is inconsistent with the opinions of the only examining and treating physicians; (2) the ALJ erred at step three of the sequential evaluation process by failing to find that Plaintiff met or medically equaled Listing 1.04 for disorders of the spine; and, (3) the ALJ erred in failing to follow the treating physician's rule.

(Doc. 9, pp. 9-15)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary. The issues are re-ordered for clarity in this discussion.

### A. Step Three Analysis

Plaintiff contends that the ALJ erred by not finding Plaintiff's severe back impairment met or medically equaled the listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04, regarding Disorders of the Spine. Specifically, Plaintiff argues that the requirements of §1.04(A) are met, or are at least medically equaled, as demonstrated by the medical evidence of record. (Doc. 9, p. 13)

Plaintiff faults the ALJ for not even discussing Listing 1.04 in his step two analysis, but she acknowledges that the failure to do so is not reversible error if the record supports the overall conclusion. *See Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010), *citing Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal citations omitted).

For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. *See Brown ex rel. Williams v. Barnhart,* 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted).

As Plaintiff points out, the ALJ did determine that Plaintiff has several severe impairments, including degenerative disc disease of the lumbrosacral spine, compression fracture of L3-4 status post fusion, arthrodesis, and herniated nucleus pulposus at L2-3. (T. 14) A diagnosis alone, however, does not establish that Plaintiff meets a listing. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003) (impairment not disabling solely because it has the diagnosis of a listed impairment, it must also have the findings shown in the Listing for that impairment); 20 C.F.R. §

404.1525(d).

>Listing 1.04(A) provides the following:

>>1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With:

>>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The Commissioner argues that the objective medical evidence does not support that Plaintiff meets or equals this listing. From a review of the evidence of record, the Court agrees. The objective medical evidence simply does not establish all of the listing requirements set forth above. Treatment records from Plaintiff's primary care physician, Rolland L. Bailey, D.O., only reflect objective exam findings on three occasions during the relevant period[1]: lumbar spasm and pain noted on April 30, 2012; back pain and spasm noted on February 12, 2013; and, a rigid and tender back noted on May 10, 2013. (T. 333, 352, 469) These few clinical findings fall short of establishing nerve root compression characterized by neuro-anatomic distribution of pain, motor loss, sensory or reflex loss, or positive straight leg raising tests as are required under the listing.

Nor have the diagnostic tests confirmed the required elements of the listing. An x-ray on April 29, 2002 revealed "excellent bridging and apparent fusion" occurring after Plaintiff's surgical procedure, good alignment, very minimal arthritic changes, and Dr. Bailey noted "[e]xcellent post op surgical result." (T. 509) On November 16, 2004, an x-ray showed the surgical instrumentation

---

[1] From Plaintiff's alleged date of disability onset on July 10, 2011 through the date of the ALJ's Decision on October 25, 2013.

with no evidence of fractures, and the instrumentation appeared to be stable at that time; some spurring was noted in the area of the old pars fracture between L2 and L3, and Dr. Bailey thought this "could be" giving some radicular type pain, but further diagnostic studies would be needed to delineate the nature of the problem. (T. 505) An x-ray on January 28, 2008 displayed normal appearance of the orthotic appliances in Plaintiff's surgically fused lumbar spine, with "not a great deal of arthritis seen." (T. 495) A CT scan on June 16, 2008 revealed that Plaintiff had undergone surgery at the L3-4 level, with screws, rods, and a metallic disc spacer present; there was good alignment; it appeared to be well healed; no fractures in the screws or rods were seen; the metallic disc spacer was in good position; and, although some mild bulging of the disc at L2-3 and a bulging disc at L4-5 was seen that flattened the thecal sac, there was no central canal or neural foraminal stenosis observed at either level. (T. 328, 489) X-rays of Plaintiff's left hip on June 29, 2012 showed no fractures or subluxations. (T. 477) X-rays of Plaintiff's lumbosacral spine on June 29, 2012 showed post-surgical changes at L3-4, but was otherwise normal. (T. 478)

Plaintiff saw Dr. Shannon Brownfield on January 4, 2013 for a consultative examination. While Dr. Brownfield's examination displayed that Plaintiff was unable to flex her lumbar spine and she walked with a stoop, it also demonstrated that she had no muscle spasm, negative straight leg rasing, normal reflexes, no muscle weakness, no muscle atrophy, and no sensory abnormalities. (T. 343-344) She was able to stand and walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position. (T. 344)

The medical evidence of record just does not support that Plaintiff met or equaled the requirements to establish Listing 1.04(A).

Contrary to Plaintiff's assertion, the ALJ did consider evidence of a listed impairment and

concluded that "[a]lthough the claimant has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1)," and "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairments of the Listing of Impairments." (T. 14) The fact that the ALJ did not elaborate on this finding does not require reversal, because the record supports his overall conclusion. *See Pepper ex rel. Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003); *see also Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 n. 3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."). Here, while it would have been preferable for the ALJ to address this specific listing, the record does support the ALJ's conclusion that the listing has not been met or medically equaled.

### B.  Treating Physician Rule

Plaintiff also contends that the ALJ erred in failing to follow the treating physician rule which allows an ALJ to disregard a treating physician's opinion only if it is inconsistent with the medical evidence as a whole. (Doc. 9, p. 14)

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders

inconsistent opinions that undermine the credibility of such opinions." *Id*. at 920-21 (internal quotations omitted); *see also Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

Plaintiff's treating physician, Dr. Bailey, who was also her employer and step-father, had written two opinion letters. The first, dated January 14, 2013, was on a form prepared by Plaintiff's counsel. (T. 470-474) In it, Dr. Bailey noted a diagnosis of two failed back surgeries following a pars fracture. (T. 470) Symptoms were said to be back pain with radiation down the left leg, numbness and tingling, and sharp pain in the left hip. (T. 470) Walking, standing, and lifting reportedly aggravate the pain and numbness. (T. 470) Clinical findings were said to be marked lumbar spasm, restricted range of motion, and positive left straight leg raising. (T. 470) Dr. Bailey felt that Plaintiff's pain would constantly interfere with her attention and concentration, and that she was incapable of even low stress jobs. (T. 471) He believed Plaintiff could sit for 15 minutes at one time; could sit less than two hours total in an eight-hour working day; could stand five minutes continuously and less than two hours total in an eight-hour working day; and, that every ten minutes she would need to walk around for four or five minutes. (T. 471) Plaintiff would also require, according to Dr. Bailey, a job that permitted shifting positions at will, frequent unscheduled breaks, and she would need to elevate her legs. (T. 472) She would also need to use an assistive device to walk. (T. 472) She could seldom lift less than ten pounds; occasionally look down, turn her head right or left, look up, and hold her head in a static position; and, she could never twist, stoop, crouch, squat, or climb. (T. 472)

The second letter, written by Dr. Bailey on September 13, 2013, advised that he had known Plaintiff for 31 years as her physician, step-father, and employer. (T. 521) He stated that Plaintiff was not capable of lifting or carrying more than five pounds; could not sit for more than 20 minutes

without a break or changing positions; and, she could not stand for more than 15 minutes without a break or something to lean on. (T. 522) He stated that on several occasions she had to rely on her back brace to be able to stand and walk, and he did not consider her to be a good candidate for rehabilitation. (T. 523)

The ALJ gave little weight to Dr. Bailey's opinions and stated his reasons for doing so. (T. 21) The ALJ discounted Dr. Bailey's opinions because there was no mention in his treatment records that he instructed Plaintiff to restrict her activity to the extreme limits he noted in his RFC assessment on January 14, 2013[2]. (T. 21) The ALJ also found no objective evidence to support Dr. Bailey's opinions, noting that an x-ray on September 8, 2000 revealed "marked improvement" with a "healing spinal fusion," an x-ray on April 29, 2002 demonstrated "excellent post op surgical results,"[3] and that further x-rays and a CT scan also fail to provide objective support for Dr. Bailey's findings. (T. 21) Further, the ALJ considered that Plaintiff was never seen by a specialist, and there is no evidence that Dr. Bailey suggested anything other than essentially routine and/or conservative treatment for Plaintiff's back pain. (T. 21) Finally, the ALJ commented that Dr. Bailey is not only Plaintiff's treating physician, but was also her employer and step-father. (T. 18) *See Fitzsimmons v. Mathews*, 647 F.32d 862, 864 (8th Cir. 1981) (step-family members' testimony was "diminished by their close relationship to plaintiff").

Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given

---

[2] Notably, as discussed above, there are very few treatment records from Dr. Bailey where objective physical examination findings are even documented.

[3] Inconsistently, Dr. Bailey stated in his January 14, 2013 RFC form "failed back surgeries (x 2)." (T. 470)

to a treating physician's evaluation. *See* 20 C.F.R § 404.1527(d)(2); SSR 96-2p; *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). Here, the ALJ has given good reasons for discounting the opinions of Dr. Bailey. After evaluating the record as a whole, the Court agrees with the ALJ's determination that other substantial evidence was inconsistent with Dr. Bailey's opinions.

Plaintiff also suggests that the ALJ gave inadequate weight to the opinion of a consultative examiner, Dr. Shannon Brownfield, who examined Plaintiff on January 4, 2013. (T. 341-346) Plaintiff's scant argument on this point is that the opinions of Drs. Bailey and Brownfield "make it clear that medications alone ... have not adequately controlled [her] pain," and that the ALJ's finding that Plaintiff can perform sedentary work "is contradicted by both Drs. Brownfield and Bail[e]y." (Doc. 9, p. 11) The record does not substantiate this.

As discussed in Subsection A above, Dr. Brownfield noted that Plaintiff was unable to flex her lumbar spine and she walked with a stoop, but his examination also demonstrated that she had no muscle spasm, negative straight leg rasing, normal reflexes, no muscle weakness, no muscle atrophy, and no sensory abnormalities. (T. 343-344) Plaintiff was able to stand and walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position. (T. 344) His review of x-rays documented that Plaintiff's lumbar spine was status post metallic fusion at L3-4, hardware in place, with curvature, and that the rest of her spine appeared normal for her age. (T. 345) Dr. Brownfield diagnosed Plaintiff with low back pain with stenosis status post-surgery and PTSD[4]. Dr. Brownfield opined that Plaintiff had "severe limit[ations]" on lifting, stooping, bending, and

---

[4] Plaintiff has not presented any argument concerning the ALJ's assessment of her mental impairments or mental limitations; she has, therefore, waived any issues related to those findings. *See Walton v. Astrue*, 334 Fed.Appx. 38, 2009 WL 3255501 (8th Cir. Oct. 13, 2009), *citing Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (claims not raised in the opening brief are deemed waived).

-11-

prolonged standing or walking. (T. 345) He did not, however, state any limitations on sitting or the need to change positions. This is significant to the ALJ's limited sedentary RFC assessment.

The ALJ determined that Dr. Brownfield's opinion of severe limitations was "more limiting than the objective medical evidence of record would support," including his own examination findings and diagnostic testing. (T. 20) The ALJ also considered Plaintiff's activities of daily living in making this determination. (T. 20) In the end, the ALJ did give some weight to Dr. Brownfield's opinion regarding the limitations on lifting, stooping, bending, and prolonged standing or walking by restricting Plaintiff to a limited range of sedentary work.

As with his evaluation of Dr. Bailey's opinions, the ALJ gave good reasons for discounting the opinion of Dr. Brownfield. Based on the record as a whole, the Court agrees with the ALJ's determination that other substantial evidence was inconsistent with Dr. Brownfield's opinion to the extent that it was more restrictive than the limited range of sedentary work the ALJ determined Plaintiff could perform.

### C.  RFC Determination

The ALJ found that Plaintiff had the RFC to perform sedentary work, except that she would be limited to jobs with simple tasks and simple instructions and only incidental contact with the public. (T. 16) "Sedentary work" is defined as work which "involves lifting no more that 10 pounds at a time and occasionally carrying articles like docket files, ledgers, and small tools;" and, although a sedentary job is defined as "one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id*.

Plaintiff argues the ALJ's determination of her RFC is unsupported by substantial evidence

as it is inconsistent with the opinions expressed by the only examining and treating physicians to express opinions as to her functional capacity. (Doc. 9, pp. 9-12) The Commissioner counters that the ALJ accounted for significant and specific limitations attributable to Plaintiff's impairments, and that substantial evidence supports the ALJ's determination that Plaintiff retains the ability to perform a limited range of sedentary work. (Doc. 10, pp. 7-19)

      RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, medical evidence that addresses the claimant's ability to function in the workplace must support the ALJ's RFC determination. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

      There are medical records in this case dating back many years relating to Plaintiff's back injury and impairment; however, the relevant period is from Plaintiff's alleged onset date of July 10, 2011, through October 25, 2013, the date of the ALJ's Decision. The Commissioner contends that the distant medical records are irrelevant to a determination of Plaintiff's DIB claim because they occurred years prior to her alleged disability onset date of July 10, 2011, and because she was working full-time during those years at the level of substantial gainful activity. (Doc. 10, p. 8) They argue that the only relevance the older medical records have is to show that Plaintiff's back pain and other problems are long-standing issues for her, and that she was able to work full-time with the same problems. (Doc. 10, p. 9) The Court agrees. Absent a showing of deterioration, working after the onset of an impairment is evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

Plaintiff reported that she "could no longer handle the job." (T. 195) The evidence of record, however, does not support a finding that her back pain and other symptoms deteriorated to such an extent that she is now precluded from all work activity.

In an appointment on March 15, 2011, just four months prior to her alleged disability onset date, Plaintiff saw Dr. Bailey for treatment of an ingrown toenail. She did not report any back pain, nor does the office note reflect any abnormality with her spine. (T. 334) She returned to Dr. Bailey on April 1, 2011 for further treatment of the ingrown toenail. Again, there is no mention in the treatment record of back pain or any abnormality of her back. (T. 479) The Commissioner correctly points out that Dr. Bailey's 2011 treatment records simply do not substantiate Plaintiff's claim that her back pain and other symptoms deteriorated to the point of disability.

Plaintiff's treatment records in 2012 similarly fail to show such a deterioration of Plaintiff's back impairment. After no physician visits for over one year, Plaintiff saw Dr. Bailey on April 30, 2012 for a check-up. She complained of back pain and left ear pain. Dr. Bailey noted that Plaintiff's left ear was inflamed, and he assessed her with lumbar spasm and pain. (T. 333) Her ongoing medications were listed (Seroquel, Xanax, Hydrocodone, and Zarah), but no new medications were prescribed. (T. 333) On June 26, 2012, Plaintiff returned to Dr. Bailey wanting to talk about her back and hip. Other than cryptically noting "back worse" and "left hip worse," there are no objective examination notes recorded. (T. 332) Plaintiff's medications were again listed, and Dr. Bailey added prescriptions for Meloxicam[5] and Gabapentin[6]. (T. 332) Dr. Bailey ordered x-rays of Plaintiff's

---

[5] A non-steroidal anti-inflammatory drug (NSAID). www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/description/drg-20066928 (last accessed February 5, 2016).

[6] An anti-convulsant used to help control partial seizures in the treatment of epilepsy. It is also used to manage postherpetic neuralgia (pain occurring after shingles). It is not used for

lumbar spine and left hip, and he referred her to Dr. Hawk. (T. 332) X-rays of Plaintiff's left hip taken June 29, 2012 were normal. (T. 477) X-rays of Plaintiff's lumbar spine taken June 29, 2012 showed post-surgical changes, but there was good alignment, no fractures or subluxations were seen, and they were interpreted as a "normal-appearing study." It was suggested that an MRI or myelogram might be helpful to better evaluate Plaintiff's spine. (T. 478) Plaintiff did not have the MRI done (T. 526, "no MRI in the last 5 years"), suggesting that Plaintiff's back pain was not as severe as subjectively claimed. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). On July 25, 2012, Plaintiff complained of lower back pain, worse in the early morning. (T. 330) Once again, Dr. Bailey did not record any objective examination notes. (T. 330) There are no further treatment records during 2012.

Having exhausted her unemployment benefits in October or November, 2012, Plaintiff then filed her application for DIB benefits on November 8, 2012. (T. 36, 144-145) Two months later, she saw Dr. Bailey for a check-up and to have him complete her attorney's disability questionnaire. (T. 353) Back pain was not recorded, nor were any objective examination notes. (T. 353) Her ongoing medications were noted, and a prescription for Cymbalta[7] was added. (T. 353) Plaintiff saw Dr. Bailey again on February 12, 2013 for a check-up, med refills, and for an ingrown toenail. (T. 352) Once again, Dr. Bailey did not record any objective examination findings. (T. 352) He noted "back

---

routine pain caused by minor injuries or arthritis. www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011 (last accessed February 5, 2016).

[7] A selective serotonin and norepinephrine reuptake inhibitor (SSNRIs), used to treat depression and anxiety; also used for pain caused by nerve damage associated with diabetes, and to treat fibromyalgia and chronic pain related to muscles and bones. www.mayoclinic.org/drugs-supplements/duloxetine-oral-route/description/drg-20067247 (last accessed February 5, 2016).

pain - spasm," and "3 surgeries - failed."[8] (T. 352) Dr. Bailey listed Plaintiff's medications, discontinued the hydrocodone, and prescribed Percocet. (T. 352) When Plaintiff next saw Dr. Bailey on May 10, 2013, she complained of worsening back pain and that she "can feel metal" in her back. (T. 469) Dr. Bailey noted that Plaintiff's paraspinous was tender and her back was rigid. He prescribed Xanax and Percocet. (T. 469) He also encouraged Plaintiff to quit smoking. (T. 469) There are no other treatment records during the relevant period.

As discussed in Subsection B above, the ALJ discounted the RFC opinions of Dr. Bailey and gave good reasons for doing so. In assessing Plaintiff's RFC, the ALJ considered and gave some weight to the non-examining State agency medical consultants' opinions. (T. 23) It was appropriate to do so. *See* 20 C.F.R. § 404.1527(e). Upon review of the record before him on January 9, 2013, Jim Takach, M.D. found that Plaintiff could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand and/or walk for a total of two hours, sit for a total of about six hours in an eight-hour work-day, and that she could perform at the sedentary level of exertion with certain postural limitations. (T. 74-75) Ronald Crow, D.O. made identical findings in his review on March 1, 2013. (T. 89-90) As the regulations provide, State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1527(e)(2)(I). It is well understood that the opinion of a non-examining physician, standing alone, does not constitute substantial evidence in the record in the face of a conflicting assessment of a treating physician, *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999); however, if an ALJ does not rely solely on a non-examining physician's opinion, but also upon an independent review of the

---

[8] As Plaintiff acknowledged during her testimony, she had two, not three, back surgeries, and the remark "failed" is inconsistent with Dr. Bailey's earlier finding that Plaintiff had an "excellent post op surgical result" after her second surgery. (T. 39, 45, 509)

medical evidence and other evidence, such as motivation to return to work and daily activities, then there is substantial evidence in the record to support the ALJ's RFC determination. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002); *see also Stormo v. Barnhart*, 377 F.3d 801, 807-808 (8th Cir. 2004). In the present case, where the opinions of examining and treating physicians have been discounted for good reasons, these medical expert opinions further support the ALJ's RFC determination.

The ALJ acknowledged that some degree of pain is substantiated in the record, but he found that Plaintiff's degree of pain seeking behavior and treatment is not indicative of a degree of pain that would prevent activities beyond a limited range of sedentary work. (T. 19) While Plaintiff clearly suffers from some degree of pain and discomfort, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Further, the ALJ considered that Plaintiff's pain appears to be well controlled with prescription medications, and that her physicians have maintained her on these medications and rarely increased their dosage or tried stronger medications. (T. 19) The record as a whole supports this finding. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling).

Lastly, the ALJ considered Plaintiff's activities of daily living ("ADL's"). In Function

Reports she submitted on November 19, 2012 and on January 5, 2013, she reported taking care of her husband who had cancer, including giving him sponge baths, dressing him, giving him his medications, and scheduling his doctor appointments. (T. 186, 204, 207) Her son and grandson helped getting him up and down when needed. (T. 186) She was able to attend to her own personal care, although with some reported difficulty.[9] (T. 186, 207) She reported the ability to prepare simple meals, clean, do laundry, drive, go shopping, handle money, and to spend time with others on the phone and on the computer. (T. 187-189, 208) The ALJ found these reported ADL's to be inconsistent with her subjective allegations of disabling pain. (T. 23) The Court cannot say that the ALJ erred in so finding. *See, e.g., Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends").

      The ALJ considered and discussed the evidence of record as a whole, including treatment records, treating physician opinions, consultative examinations and opinions, State agency reviewing physician opinions, and Plaintiff's reported ADL's in reaching his RFC finding, and the ALJ properly accounted for any limitations supported by the evidence by restricting Plaintiff to a limited range of sedentary work.

---

[9] On January 30, 2014, she informed a physician, Dr. Tilley, that she was able to perform activity of daily living with pain medication. (T. 526)

**IV. Conclusion**

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of February, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE